﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 190521-6423
DATE: August 31, 2020

REMANDED

Entitlement to service connection for a neck disability is remanded.

REASONS FOR REMAND

The Veteran served on active duty from November 2009 to June 2018.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a May 2019 rating decision of the Department of Veterans Affairs, which denied the Veteran’s claims.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran timely appealed the May 2019 rating decision to the Board by requesting Direct Review under the AMA. See the VA Form 10182 dated May 2019. Accordingly, the Board’s current review is limited to the evidence of record at the time of the May 10, 2019 rating decision.

While the May 2019 rating decision did not explicitly find that new and relevant evidence was submitted to reopen the Veteran’s previously denied claim of entitlement to service connection for a neck disability, the matter was reconsidered on the merits. As such, there is at least an implicit finding of new and relevant evidence, and the Board is bound by this favorable finding.

1. Entitlement to service connection for a neck disability is remanded.

The Veteran asserts entitlement to service connection for a neck disability, which he contends was incurred as a result of wearing heavy equipment during his active duty service. See, e.g., the VA examination report dated July 2018.

As described above, the Veteran served on active duty from November 2009 to June 2018. Service in Southwest Asia was indicated by the record. The Veteran’s June 2009 enlistment examination did not document any neck abnormalities. However, in June 2010, the Veteran complained of headaches, which traveled down his neck. Dating from August 2017, he regularly complained of neck pain. See, e.g., the STRs dated November 2017, December 2017, February 2018, and April 2018. STRs dated in September 2017 note the Veteran’s two-year history of neck pain with treatment by a chiropractor. X-rays of the cervical spine showed “[t]he neural foramina are patent bilaterally. Adequate disc height. No compression deformity. Dextroscoliosis of the cervical spine.” See the STRs dated September 2017.

The Veteran was afforded a VA examination in July 2018, one month after his active duty discharge. The VA examiner noted the Veteran’s report of neck pain due to the wearing of heavy equipment during his military service. The examiner confirmed a diagnosis of dextroscoliosis of the cervical spine.

In the May 2019 rating decision, the RO denied the Veteran’s claim of entitlement to service connection for a neck disability based upon a finding that the Veteran’s diagnosed dextroscoliosis of the cervical spine is a congenital defect. To this end, the Board recognizes that a congenital "defect" is not a "disease or injury" within the meaning of applicable legislation and thus is not capable of being service connected for VA compensation purposes. 38 C.F.R. §§ 3.303(c), 4.9. Service connection is permissible, however, for "diseases" (but not "defects") of congenital, developmental, or familial origin if the evidence as a whole shows that the manifestation of the disease in service constituted "aggravation" of the disease within the meaning of applicable VA regulations. VAOPGCPREC 82-92 (July 18, 1990); 38 C.F.R. §§ 3.303(c), 3.306. Although service connection cannot be granted for a congenital or developmental "defect," such a defect can be subject to a superimposed disease or injury, and if that disease or injury occurred during military service, service connection may be warranted for the resultant disability. VAOPGCPREC 82-92 (July 18, 1990).

Accordingly, the Board finds that a pre-decisional duty to assist error was made in this matter because the RO failed to obtain a VA medical opinion to determine whether the Veteran's dextroscoliosis of the cervical spine represents a congenital defect or disease; and, if a defect, whether the condition was subject to superimposed disease or injury, resulting in a current neck disability. See Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991) (the Board is prohibited from exercising its own independent judgment to resolve medical questions); see also 38 C.F.R. § 3.159(c)(4) (a medical examination or opinion is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim). As such, remand of this matter is warranted in order to the above-identified VA opinion to be obtained.

The matter is REMANDED for the following action:

Refer the VA claims file to an examiner with appropriate expertise in order to address the etiology of Veteran’s diagnosed dextroscoliosis of the cervical spine. The clinician is requested to review the claims file in its entirety including all service treatment records, VA, and private treatment records. Then, the clinician should address the following:

(a). Is the Veteran’s diagnosed dextroscoliosis of the cervical spine a congenital defect or disease? For VA purposes, a defect differs from a disease in that the former is “more or less stationary in nature” while the latter is “capable of improving or deteriorating.” 

(b). If the Veteran’s dextroscoliosis of the cervical spine is a congenital defect, is it at least as likely as not (i.e., at least a 50 percent probability) that he incurred any superimposed disease or injury on such congenital defect during active duty service? If the answer to the above question is “Yes,” please describe the resultant disability.

(c). If the dextroscoliosis of the cervical spine is a congenital disease, did it clearly and unmistakably (undebatably) pre-exist the Veteran’s active duty military service? If dextroscoliosis pre-existed service, was it clearly and unmistakably not aggravated beyond its natural progress during service?

(d). If the diagnosed dextroscoliosis of the cervical spine (or any other identified cervical spine disability) is not a congenital condition, is it at least as likely as not (i.e., a 50 percent or greater probability) that it had its clinical onset in service or is otherwise related to service?

Should the examiner decide that a physical examination of the Veteran is required to address these questions, such should be scheduled.

In addressing the above, the examiner must consider the pertinent medical, periodical, and other objective in- and post-service evidence, and all lay assertions.

(Continued on the next page)

 

The examiner is also advised that the Veteran is competent to report his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions. If the Veteran’s assertions in any regard are discounted, the examiner should clearly so state and explain why.

All examination findings/testing results (if any), along with complete, clearly-stated rationale for the conclusions reached, must be provided.

 

 

K. Conner

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board K. K. Buckley, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.